IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| ANTHONY BARNES, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 3:14CV00191-JJV |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Anthony Barnes, appeals the final decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.   BACKGROUND**

On December 8, 2011, Mr. Barnes protectively filed for benefits due to leg problems from artery blockage, splintered right wrist, broken ankle, broken arm, broken ribs, broken sternum, plastic tube in stomach, and cyst on kidney. (Tr. 178)  His claims were denied initially and upon reconsideration.  At Mr. Barnes's request, an Administrative Law Judge ("ALJ") held a hearing on June 26, 2013, where Mr. Barnes appeared with his lawyer.  At the hearing, the ALJ heard testimony from Mr. Barnes and a vocational expert ("VE").  (Tr. 22-44)

The ALJ issued a decision on July 25, 2013, finding that Mr. Barnes was not disabled under the Act. (Tr. 9-17)  The Appeals Council denied Mr. Barnes's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-3)

Mr. Barnes, who was fifty-two years old at the time of the hearing, has a tenth grade education and past relevant work experience as a spot welder. (Tr. 26, 41)

## II.   DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Mr. Barnes had not engaged in substantial gainful activity since July 1, 2003, and he had the following severe impairments: history of polytrauma (remote), peripheral artery disease, and history of remote arterial injury. (Tr. 11-12) However, the ALJ found that Mr. Barnes did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 12) According to the ALJ, Mr. Barnes has the residual functional capacity ("RFC") to do light work, except he is limited to no more than frequent climbing. (Tr. 12) The VE testified that the jobs available with these limitations were small products assembler and egg washer. (Tr. 42) Accordingly, the ALJ determined that Mr. Barnes could perform a significant number of other jobs existing in the national economy, and found he was not disabled.

## III.   ANALYSIS

### A.   Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3] Substantial evidence is "less

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2]20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

[3]*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

**B.      Mr. Barnes's Arguments for Reversal**

Mr. Barnes asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence.  To support his position that the ALJ erred, Mr. Barnes relies on Dr. Waddy's September 2010 assessment, Dr. Liggett's findings from 2009, and a March 2011 bone scan. (Doc. No. 11)  While this evidence may support Mr. Barnes's position, the question is whether "good reasons and substantial evidence" exist to support the ALJ's finding; they do.[6]

      1.      Dr. Waddy's Finding

In September 2010, Dr. Waddy determined that Mr. Barnes had "moderately severe" walking limitations and "moderate" standing limitations due to his peripheral arterial disease. (Tr. 403) The ALJ questioned Dr. Waddy's finding because it was made "despite a normal examination" and noted that nothing in Dr. Waddy's review supported his conclusion. (Tr. 14) In fact, Dr. Waddy found that Mr. Barnes was able to stand and walk without assistive devices, stand from a sitting position, had negative straight leg raises, and had normal strength and reflexes.  (Tr. 402)

---

[4]*Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5]*Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

[6]*Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Additionally, Mr. Barnes's arterial problems were the result of an accident in the early 1980s, so he worked for years after having surgery to correct the issues.[7] (Tr. 165-171) Finally, Dr. Waddy's limitations are contradicted by Mr. Barnes's physical activity -- *e.g.*, in 2006 Mr. Barnes attempted to run from the police but, eventually was caught by a police dog and, as discussed below, in 2007 he wanted to be on Arkansas Department of Correction work release. (Tr. 255, 368) Ultimately, the ALJ found Dr. Waddy's opinion "unpersuasive" in light of the other evidence in the record. (Tr. 14) An ALJ is permitted to disregard a physician's opinion when it is inconsistent or where other medical assessments are better supported.[8]

    2.    Dr. Liggett's Findings

Mr. Barnes also contends that an assessment by Dr. Liggett supports his disability claim. When Mr. Barnes was in the ADC in 2009, Dr. Liggett conducted an "Initial Report of Physical Examination" and noted that Mr. Barnes had "[w]eak femoral and no distal pulses by palpation consistent with Aortoiliac and left distal arterial occlusive disease." (Tr. 322) Dr. Liggett indicated that Mr. Barnes should be restricted from assignments "requiring prolonged crawling, stooping, running, jumping, walking, or standing" and classified him as an M-2." (Tr. 323) First, this restriction was a listing that included all of those categories and Dr. Liggett did not note one as more than severe than the other -- in other words, it was all or none. Furthermore, these limitations are contrary to Mr. Barnes's own assessment of his abilities. When Mr. Barnes was incarcerated in 2006, the ADC doctor determined he had "only slight limited mobility" in the upper extremities and "slightly limited mobility" in the lower extremities, and classified him as M-2 which is "Average-

---

[7]*Krone v. Apfel*, 187 F.3d 642 (8th Cir. 1999) (finding that "despite some evidence of a possible mental impairment," the fact that claimant continued to work indicated that any impairment was not disabling).

[8]*Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

Good Physical Condition." (Tr. 245)  In 2007, Mr. Barnes asked that his work status be upgraded from M-2 to M-1 so he could be on work release; the request was granted.  (Tr. 14, 255)  Also worth noting is the fact that the ADC doctor's findings and Mr. Barnes's upgrade request were made a decade after the on-set of the artery problems in his legs -- a problem he had for years while working.  (Tr. 242)  Finally, at the hearing, Mr. Barnes testified that the only problems that affected his ability to work were his left wrist and left ankle, and those issues were sustained in a 2011 motor vehicle accident, which was after the assessments by Dr. Liggett (and Dr. Waddy).  (Tr. 34)

       3.     No Medication and Failure to Seek Treatment

The ALJ noted, and Mr. Barnes testified, that he takes no medications for his alleged impairments. (Tr. 14, 36)  Mr. Barnes also testified that he had not seen a doctor for his wrist and ankle problems since March 2011, when the injuries were first sustained. (Tr. 34-35)  Between 2003 and 2011, Mr. Barnes saw the doctor for a snake bite, a spider bite, a cut on the hand, acid reflux, toothaches, and a dog bite, but not for any of his alleged impairments. (Tr. 249-268, 368-384)  The ALJ was permitted to weigh the credibility of Mr. Barnes's subjective complaints of pain by considering whether he sought regular medical treatment.[9]

Though Ms. Barnes asserts he is unable to afford medication and treatment, he is a smoker and, according the medical records, has been smoking at least a pack-a-day for over thirty-five years. (Tr. 34, 241, 355, 368, 373, 471)  Smoking is an expensive, ongoing habit that can be considered when weighing Mr. Barnes's credibility.[10]

---

[9] *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[10] *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.").

4.	Other Medical Evidence

A September 27, 2010, doppler found "no significant peripheral vascular disease" and indicated that "[t]he arterial waveform [was] normal and triphasic" in both lower extremities. (Tr. 420-421)  This report belies the restrictions noted by Dr. Waddy and Dr. Liggett.

An April 12, 2012, disability determination by Dr. Troxel concluded that Mr. Barnes had "no significant [reduction in] ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak" (Tr. 475)

A 2012 x-ray of Mr. Barnes's wrist revealed "no signs of acute boney injuries or other osseous disease" and noted "an old, nonunion fracture of the distal ulnar styloid process." (Tr. 480) An back x-ray was unremarkable and "incidentally noted" only "degenerative changes of the cervical spine." (Tr. 482)  The conclusions on the ankle x-ray were "[s]oft tissue swelling . . . [but] not signs of acute fracture, dislocations, or other evidence of acute bony injuries.  Probable old healed calcaneal fracture." (Tr. 484)  The ALJ relied on these x-ray reports and noted they supported Dr. Troxel's conclusions. (Tr. 14)

The ALJ also relied on the reviews by the state agency medical consultants who determined that Mr. Barnes had the ability to perform light work. (Tr. 15)

Mr. Barnes testified that his feet swell any time he is on them for an extended period. (Tr. 36) "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."[11]  Though there may be some evidence that Mr. Barnes has limitations related to his impairments, the ALJ's finding that he could perform light work is supported by the record.[12]

---

[11]*Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996).

[12]*Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have

6

## IV.    CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 8th day of January, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

decided the case differently.").